**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| Malcolm D. Redmon-El, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20 C 50128 |
| v. | ) | |
| | ) | Hon. Philip G. Reinhard |
| J.O Sullivan, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons stated below, defendants' motion to dismiss [43] is granted, and the complaint is dismissed with prejudice. Case closed.

## MEMORANDUM, OPINION, AND ORDER

Plaintiff Malcom D. Redmon-El filed his initial complaint *pro se*, asserting claims pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) against prison officials at USP Thomson. The gist of this complaint is that prison officials repeatedly retaliated against him in various ways (*e.g.* performing unnecessary strip searches, denying him showers on certain days, destroying his personal property) after he filed a complaint under the Prison Rape Elimination Act ("PREA") against a guard who allegedly grabbed and squeezed plaintiff's buttocks during a search. In this court's initial screening order [17] under 28 U.S.C. § 1915A, this court construed plaintiff's complaint as raising only a First Amendment retaliation claim under *Bivens*.[1] The court further assumed—for screening purposes only—that a First Amendment retaliation claim was cognizable under *Bivens*, and then held the case could go forward past the screening stage based on that assumption. But at the same time, the court noted that the case law raised substantial doubt on this point. Specifically, in *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017), the Supreme Court held that courts should exercise "caution" when considering whether to imply new claims under *Bivens*. To date, the Supreme Court has only recognized three such claims: a Fourth Amendment claim against federal agents who allegedly searched the plaintiff's apartment and arrested him without a warrant (*Bivens*); a Fifth Amendment gender discrimination claim brought by an administrative assistant fired by a Congressman (*Davis v. Passman*, 442 U.S. 228 (1979)); and an Eight Amendment claim against prison officials for deliberate indifference in not providing an inhaler for an asthma condition resulting in death (*Carlson v. Green*, 446 U.S. 14 (1980)). In the screening order, this court further noted that numerous courts since *Ziglar* had concluded that *Bivens* does not provide a vehicle to litigate First Amendment claims. However, the court let plaintiff's case go forward because the Seventh Circuit had recently opined that the determination of whether to recognize a new *Bivens* right is better

---

[1] This screening order contains a more detailed summary of the allegations of the complaint. *See* [17].

made after adversarial briefing rather than in a § 1915A screening order. *See Smadi v. True*, 783 Fed. Appx. 633, 634 (7th Cir. 2019).

Thereafter, the government, representing the five BOP individual defendants, filed a motion to dismiss and a supporting memorandum of law, arguing that this court should not recognize a new *Bivens* remedy and should dismiss the suit. After receiving these filings, the court appointed Mark C. Murnane, from O'Connor & Nakos, Ltd., to represent plaintiff. Counsel filed a response brief, and the government filed a reply. The briefs are well-written by both sides and set forth the arguments in a clear fashion. The court particularly thanks Mr. Murnane for representing plaintiff *pro bono*.

After reviewing these briefs and relevant case law, the court is not persuaded that a First Amendment retaliation claim should be implied under *Bivens*. While recognizing the importance of this issue, the court sees no need to engage in a lengthy analysis here. First, as documented in the briefs, many courts have considered this issue, and the arguments pro and con have already been summarized and debated extensively. Just a few months ago, Judge Johnston considered the same question now before this court—namely, whether to recognize a First Amendment *Bivens* claim alleging retaliation after the filing of a PREA complaint—and he answered "no" to that question based on an what he described was an "avalanche" of authority reaching the same conclusion and also based on his own independent analysis. *See Sargeant v. Barfield*, 2021 WL 2473805, *1-2 (N.D. Ill. June 17, 2021) (observing that "every circuit court to address the issue has found that federal inmates have no First Amendment retaliation claim under *Bivens* after [*Ziglar*]" and that "each district court in the Seventh Circuit to address the issue has found likewise") (collecting cases). Given this authority, Judge Johnston found no need for a long opinion. *See id.* at *3 ("[T]he Court sees no benefit by elaborating further on its analysis. Doing so would merely be a reiteration of the cornucopia of other decisions. The Court's insight would add nothing to this jurisprudence."). Second, in *Sargeant*, the plaintiff has filed a notice of appeal. There is thus a good chance that the Seventh Circuit will provide a more definitive answer, at least until the Supreme Court decides to address the issue.[2]

Both sides make arguments under the *Ziglar* two-step framework. The first question is whether the putative claim arises in a new context as compared to the three previously-recognized situations in *Bivens, Davis,* and *Carlson*. This court agrees with the government that plaintiff's First Amendment retaliation claim differs in "a meaningful way" from those situations and thus arises in a new context. *Ziglar*, 137 S.Ct. at 1859. As the government notes, the Supreme Court has never extended *Bivens* to cover First Amendment claims, and district courts nationwide have agreed with this conclusion after *Ziglar*. [44 at pp. 5-6, citing to *Keller v. Walton*, 2019 WL 1513498 (S.D. Ill. April 8, 2019) and other cases; *Sargeant*, 2021 WL 2473805 at *2 ("The courts uniformly find—correctly—that recognizing a First Amendment retaliation claim would be an extension of *Bivens* into a new context.").] As the government notes, neither *Bivens* nor *Davis* arose in the prison context, and *Carlson*, which did, was based on the alleged failure to provide life-saving medical care. The court finds that these are meaningful differences. Plaintiff argues in

---

[2] The parties agree that the Seventh Circuit has not directly addressed this issue after *Ziglar*, although the Seventh Circuit did comment on the issue in dicta in an unpublished decision. *See White v. True*, 833 Fed. Appx. 15, 18 (7th Cir. 2020) (observing that "First Amendment claims are not generally recognized in *Bivens* suits").

response that both the Supreme Court and the Seventh Circuit have "well-established" methods for adjudicating the elements of a First Amendment retaliation claim. [57 at pp. 4-5.] Plaintiff relies on *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996), where the Seventh Circuit recognized a *Bivens* remedy when an official blocked a prisoner's transfer to another facility allegedly in retaliation for the prisoner's attempts to get relief through the prison appeals process and the federal courts. Although *Babcock* on its face provides support for plaintiff's argument, it was decided in 1996, many years before *Ziglar*, and its precedential value is thus doubtful. *See Sargeant*, 2021 WL 2473805 at *1 (concluding that *Babcock* and other pre-*Ziglar* cases are "no longer controlling").

Moving to the second *Ziglar* step, the court asks whether any "special factors" counsel against recognition of a remedy in this new context. *Ziglar*, 137 S.Ct. at 1859-60. The primary factor relied on by the government is the existence of alternative methods of relief available to plaintiff, the main one being the BOP's administrative remedy program. *Id.* at 1863 ("[W]hen alternative methods of relief are available, a *Bivens* remedy is usually not."). This program allows inmates to file grievances "relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10. As the government notes, other courts have recognized that the BOP program provides a sufficient alternative process for purposes of the *Bivens* analysis. *See, e.g.*, *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018). The government also points to other alternatives, including seeking an injunction, asserting a state tort claim, filing a habeas petition, and making a claim for damaged property under 31 U.S.C. § 3723. The government emphasizes that it is the availability—and not the effectiveness—of these alternatives that is important. *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001) ("So long as the plaintiff had an avenue for *some* redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability.") (emphasis added). In addition to alternative remedies, the government points to several other special factors, including separation-of-powers concerns, the restrictions imposed by Congress in the Prison Litigation Reform Act, and the explicit delegation of the day-to-day management of federal prisons to the Executive Branch. [44 at pp. 10-12.] In terms of plaintiff's specific allegations here, the government notes that questions about whether or how to search an inmate or his property or questions about whether to issue an incident report are issues potentially affecting the safety of the entire facility. *Id.* at p. 11. The government raises concerns about the volume of potential litigation if this remedy were recognized, noting that there are approximately 152,000 BOP inmates and 37,500 BOP employees nationwide. *Id.* at 12. In short, the government worries about the opening of the litigation floodgates.

Plaintiff offers a series of counter-arguments. He first asks this court to take a "fresh look" at these issues and consider whether the alternative remedies listed by the government "truly afford relief." [57 at p. 10.] As for the separation-of-powers concerns, plaintiff argues that his claim will not call into question "whether BOP's policies, processes, or administrative decisions are 'best practice' or otherwise reasonable or fair," but will instead focus just on whether defendants' actions were motivated by a desire to retaliate against plaintiff for filing a PREA complaint. *Id.* at p. 11. The court is not convinced that these two questions can be so easily disentangled. As for the PLRA, plaintiff argues that some of its provisions, such as the physical injury requirement, are indirect evidence that Congress thought prisoners should be able to bring civil actions for money damages. *Id.* Plaintiff also offers reassurances to allay the concerns about the litigation floodgates.

He notes, for example, that court would still be able to screen complaints under § 1915A to weed out minor claims. Finally, he raises his own slippery slope argument by suggesting that the government's position could eventually "preclude all federal prisoners from making any claims for *Bivens* remedies, other than Eighth Amendment cruel and unusual punishment claims based on a denial of medical care." *Id.* at p. 13.

Plaintiff's arguments are not unreasonable, but the court finds that the government's arguments, on balance, are more compelling. The court, in particular, shares the government's concern that allegations that guards were acting out of a retaliatory motive are often "easy to make and hard to disprove" and thus could be "crippling to prison administrators who must make uncountable daily decisions affecting inmates." [58 at p. 9.] In the end, the biggest impediment to plaintiff's claim is *Ziglar*. Plaintiff argues that this was a unique case linked to "decades of precedent rejecting judicial intrusion into matters of national security." [57 at p. 3.] While this is perhaps one way to read this case, this court still cannot overlook the more general pronouncements from that case, most notably the often-quoted statement that implying a *Bivens* remedy "is now a 'disfavored' judicial activity." 137 S.Ct. at 1857. In *Sargeant*, Judge Johnston analogized the decades-long *Bivens* jurisprudence to a "slow-moving vehicle" and stated that the Supreme Court, with its *Ziglar* decision, had "slammed on the brakes" and had announced that it was "thinking about throwing [this vehicle] into reverse." *Id.* at *1. Plaintiff's argument goes against this trend.

In conclusion, the court notes that neither side has suggested that anything is left to litigate in this case if this court does not recognize a new *Bivens* remedy.

## ORDER

Defendants' motion to dismiss [43] is granted, and the complaint is dismissed with prejudice. Case closed.

Date: 9/20/2021                               ENTER:

_Philip G. Reinhard_
_____
United States District Court Judge

Electronic Notices. (LC)

4